## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

EILEEN HUTCHINS, Individually and as     :
representative of the Estate of Marian W.     :
Fennell, Deceased, ET AL.,     :
                                          :       C. A. No. 08-640-JJF-LPS
                Plaintiffs,     :
                                          :       CONSOLIDATED
     v.     :
                                          :
BAYER CORPORATION, ET AL.,     :
                                          :
                Defendants.     :

## REPORT AND RECOMMENDATION REGARDING
## MOTION TO REMAND AND ORDER REGARDING MOTIONS TO STAY

       This products liability case presents an interesting procedural question involving issues of

statutory construction, federalism, and multi-district litigation.  Essentially, the question now

before me is where this case should proceed.  Neither side wishes to litigate here in the United

States District Court for the District of Delaware.  Plaintiff, Eileen Hutchins ("Hutchins"), filed

suit in the Delaware Superior Court and she has moved to have the case remanded back to that

state court.[1]  Defendant Bayer Corporation ("Bayer") removed Hutchins' case to this Court and

---

       [1]Hutchins sues individually and as the representative of the Estate of Marian Fennell.
(D.I. 1 Ex. A)  Hutchins' case was filed in Superior Court by the same counsel and at the same
time as 103 other products liability actions involving the same product.  All 104 actions were
removed to this Court.  *See* C.A. No. 08-640-JJF-LPS through C.A. No. 08-743-JJF-LPS.  These
actions have been consolidated for pretrial purposes, with the Hutchins action designated the lead
case.  (C.A. No. 08-640-JJF-LPS D.I. 17)  The same motions are pending in all of the cases.
Hereinafter, except where it is clear from the context that I am addressing Hutchins' specific
factual allegations, all references to "this action" and "Hutchins" shall refer, respectively, to all of
the consolidated actions and to all of the plaintiffs in each of the consolidated actions.  The legal
issues presented, and their resolution, are identical in all 104 actions.

now seeks to have it stayed so it may be transferred to the Southern District of Florida as a "tag-along" to multi-district litigation pending in that Court. *See* MDL Docket No. 1928, *In re: Trasylol Products Liability Litigation* ("MDL Action").

The principal issue requires that I consider the language and policies underlying 28 U.S.C. § 1441(b), relating to motions to remand a case that has been removed from state court to federal court. Section 1441(b) provides that a case with respect to which there is federal court jurisdiction based on diversity may be removed to federal court "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Here, Bayer removed this case before any defendant – including one defendant which is a citizen of Delaware, the State in which this action was brought – was served. Thus, the deceptively simple question is: may an out-of-State defendant (also referred to as a "non-forum defendant") remove a state court action to federal court before a plaintiff has served any defendant, when one of the properly-joined but non-served defendants is an in-State defendant (i.e., a "forum defendant")?

The answer to this question provides the basis for the Court's ruling on the three motions pending before it: (i) Hutchins' motion to remand this action to the Delaware Superior Court (D.I. 6); (ii) Hutchins' motion to stay transfer of these cases to the MDL Action (D.I. 7); and (iii) Bayer's motion to stay these proceedings pending the decision of the United States Judicial Panel on Multidistrict Litigation ("JPML") whether to transfer this action to the MDL Action in the Southern District of Florida (D.I. 5).

There are principled reasons to remand, as Hutchins asks that I do, but there are likewise principled reasons to deny remand and require this action to proceed in federal court. The many

2

district courts that have addressed the issue before me have reached conflicting decisions.  There is no appellate authority.[2]  The parties agree that the issue for decision – and the subsidiary issue as to whether I should even render a decision – falls squarely within the Court's discretion.

As explained below, I conclude that primacy must be given to the unambiguous language of the relevant statute, Section 1441(b).  I perceive no advantage that the MDL court would have in resolving the issue presented – and fully briefed and argued – here.  Therefore, I recommend that the motion to remand be denied.  Further, I deny Hutchins' motion to stay transfer to the MDL Action and grant Bayer's motion to stay this action pending decision by the JPML on defendants' efforts to transfer this action to the MDL Action.

## PROCEDURAL BACKGROUND

Hutchins filed suit in the Superior Court for the State of Delaware on September 26, 2008.  (D.I. 1 Ex. A)  The allegations in the complaint relate to the prescription pharmaceutical aprotinin injection, which has the proprietary name Trasylol.  (D.I. 1 ¶ 2)  The complaint alleges that Marian Fennell, Hutchins' father, was administered Trasylol during surgery in 2004 and died in 2005.  (D.I. 1 Ex, A ¶¶ 29-31)  The complaint further alleges that while Trasylol was supposed to reduce the risk of blood loss and the need for transfusions during surgery, Trasylol instead

---

[2]Pursuant to 28 U.S.C. § 1447(d), an order remanding a case to state court is generally not reviewable on appeal. *See Roxbury Condo. Ass'n, Inc. v. Anthony S. Cupo Agency*, 316 F.3d 224, 227 & n.1 (3d Cir. 2003); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S. Ct. 1712, 1718 (1996) (noting that generally there is no appellate review available for remand orders based on lack of subject matter jurisdiction or defects in removal process).  The Sixth Circuit has noted, in dicta, in circumstances similar but not identical to those presented here: "Where there is complete diversity of citizenship . . ., the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)." *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) (emphasis in original).

3

increases the risk of kidney failure and death. (D.I. 6 at 1-2)

Hutchins sued four entities. Defendant Bayer Corporation is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. (D.I. 1 Ex. A ¶ 4) According to the complaint, "Bayer Corporation was at all times responsible for the research, testing, development, manufacturing, sales, distribution, promotion, labeling and marketing of Trasylol® which it placed into the stream of commerce in the United States." *Id.* Defendant Bayer Health, LLC is a Delaware limited liability company with its principal place of business in West Haven, Connecticut. (D.I. 1 Ex. A ¶ 5) Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation with a principal place of business in Wayne, New Jersey. (D.I. 1 Ex. A ¶ 6) Finally, Defendant Bayer AG is a German corporation with its principal place of business in Leverkusen, Germany. (D.I. 1 Ex. A ¶ 7)

On October 1, 2008, Bayer removed this action from Delaware Superior Court to District Court. (D.I. 1) Bayer, as a resident of Pennsylvania, is an out-of-State or "non-forum" defendant. Although the remaining three defendants did not join Bayer's Notice of Removal, and have not filed such a notice themselves, they do not oppose Bayer's removal. *See* D.I. 1 ¶ 5 (making representation on behalf of Bayer Healthcare Pharmaceuticals, Inc.). At the time Bayer removed this action none of the defendants had been served with Hutchins' complaint. *Id.*[3]

---

[3]Hutchins has not been entirely clear as to whether it was impossible for her to serve defendants within the five days that elapsed between the filing of her suit and Bayer's removal or whether service during this short period would merely have been impractical. *Compare, e.g.*, D.I. 6 at 2 (Hutchins arguing that case was removed "before Plaintiff could serve any of the Bayer defendants") (emphasis added); D.I. 25 at 3 ("[I]t was impossible for Plaintiffs to serve Bayer with process prior to Bayer's removal.") (emphasis added) *with* D.I. 6 at 4 (Hutchins claiming removal occurred "before Plaintiff had any practical opportunity to serve it with process") (emphasis added).

4

On October 2, 2008, Bayer filed with the JPML a notice identifying the Hutchins action as a potential "tag-along" action to the already pending MDL Action (to which federal court product liability cases involving Trasylol have been transferred since April 2008).  (D.I. 5 ¶¶ 1-2)  Several days later, on October 6, 2008, Bayer moved to stay all proceedings here pending a decision by the JPML whether to transfer the Hutchins action to the MDL Action.  (D.I. 5)

On October 8, 2008, Hutchins filed a motion to remand this action to Superior Court. (D.I. 6)  On the same date, Hutchins moved to stay transfer of this action to the MDL Action. (D.I. 7)[4]

This case was referred to me on October 20, 2008, to "hear and resolve all pretrial matters, up to and including the pretrial conference."  (D.I. 16)  I held a teleconference with counsel on October 22, 2008.  That same day the JPML issued a conditional transfer order to transfer all 104 actions that have been consolidated with Hutchins' action in this Court to the MDL Action in the Southern District of Florida.  On November 21, 2008, Hutchins filed with the JPML her opposition to the conditional transfer order.[5]

On December 4, 2008, I heard argument on the parties' pending motions. *See* Transcript (D.I. 27) (hereinafter "Tr.").[6]

---

[4]On October 24, 2008, Hutchins filed a "Supplemental Motion to Stay Transfer to MDL." (D.I. 20)  My discussion of Hutchins' motion to stay includes both her original motion and her supplemental motion.

[5]The JPML is scheduled to take up Hutchins' objections to its conditional transfer order on January 29, 2009.

[6]Nine of the 104 plaintiffs in the actions that have been consolidated here have also filed their cases directly in the MDL Action.  Plaintiff's counsel, who is also counsel for these nine other plaintiffs, agrees that "[t]hose cases belong in the MDL and should stay in the MDL."  Tr. at 17.  The parties are directed to submit a proposed order or orders to dismiss these nine actions.

## LEGAL STANDARDS

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for any district . . . where such action is pending." As relevant here, district courts have original jurisdiction over cases in which there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Here, there is no dispute that diversity jurisdiction exists, as there is complete diversity among the parties (Hutchins is a citizen of Georgia, and none of the defendants are) and the amount in controversy exceeds $75,000. (D.I. 1 ¶¶ 11-20)

After a defendant removes a state case to federal court, the plaintiff may file a motion to remand, and the district court must remand if there is no federal jurisdiction or if there is a defect in the removal procedure. *See* 28 U.S.C. § 1447(c). A court's authority to remand a removed case survives a JPML conditional transfer order. *See State of Rio de Janeiro of Federated Republic of Brazil v. Philip Morris Inc.*, 239 F.3d 714, 715 (5th Cir. 2001); *see also* 28 U.S.C. § 1407.

Whether or not to stay litigation is a matter committed to the discretion of the district court as part of its inherent power to conserve judicial resources by controlling its docket. *See Cost Brothers, Inc. v. Travelers Indemnity Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Benge v. Eli Lilly and Co.*, 553 F. Supp.2d 1049, 1050 (N.D. Ind. 2008) ("The decision to issue a stay of proceedings when a party submits a motion for transfer to an MDL panel rests within the court's discretion.").

Because a ruling on a motion to remand is considered "case-dispositive," a magistrate

6

judge's authority is limited to making a Report and Recommendation as to how the Court should rule on such a motion. *See In re U.S. Healthcare*, 159 F.3d 142, 145-46 (3d Cir. 1998). Motions to stay, however, are non-dispositive. *See Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*, 2008 WL 4540394, at *1 n.1 (W.D. Pa. Oct. 7, 2008); *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp.2d 418, 426 n.7 (N.D.N.Y. 2007). Therefore, my ruling with respect to each side's motion to stay is an order of the Court.

## DISCUSSION

### Should This Court Decide The Remand Motion?

MDL courts may decide remand motions. *See generally In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). Bayer's preference is that I refrain from ruling on Hutchins' motion to remand and allow Judge Middlebrooks, who is presiding over the MDL Action, to decide it. *See, e.g.*, Tr. at 25 ("It could well be that Judge Middlebrooks will rule against us . . . . But it should be his decision, since he is the person who is attempting to manage this litigation on a nationwide basis.").

Both sides observe, however, that the question of whether to decide the motion to remand is a matter left to this Court's discretion. *See* D.I. 7 at 1; Tr. at 26, 30. I believe the better exercise of this discretion is for this Court to decide the remand motion. The remand issue has been fully briefed and argued here. I have been assured by Bayer that the same "joined and served" issue is not before Judge Middlebrooks in connection with any of the cases that are part of the MDL Action. Tr. at 30-31. Nor does it appear that the issue before me has any aspect to it that would render an MDL court uniquely qualified to decide it. *See Stern v. Mut. Life Ins. Co. of New York*, 968 F. Supp. 637, 639 (N.D. Ala. 1997) ("This determination [whether to remand]

involves no issues that the putative transferee court in the multi-district action would be uniquely qualified to address.").  Moreover, if Hutchins is correct – and this action was improperly removed to federal court – it would be best for a federal court promptly to remand the case to state court so it may proceed without any further unnecessary delay.  This Court is in a position to make that decision.  *See generally Greene v. Wyeth*, 344 F. Supp.2d 674, 679 (D. Nev. 2004) (deciding motion to remand rather than permitting MDL court to do so given interests of expediency).[7]


### Section 1441(b) And The "Forum Defendant Rule"

Pursuant to 28 U.S.C. § 1441(b):

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States [i.e., federal question cases] shall be removable without regard to the citizenship or residence of the parties.  Any other such action [i.e., cases based on diversity jurisdiction] <u>shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought</u>.

(Emphasis added)  Relevant here is the second sentence, which applies to cases where the basis for federal court jurisdiction is diversity of citizenship among the parties.  In such cases, what is "sometimes called the 'forum defendant' rule" provides that a case in which one or more of the

---

[7]Hutchins insists that this Court, rather than an MDL court, should decide her motion to remand also because it purportedly presents a novel issue of Delaware law.  *See* D.I. 7 at 4. However, as the Supreme Court has stated, "The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941); *see also* 14B Wright, Miller & Cooper § 3721 ("Federal law obviously determines whether the elements of removal jurisdiction have been satisfied.").

"properly joined and served" defendants is a forum defendant – that is, a citizen of the state in which the state court action is brought – may not be removed to federal court. *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 378 (7th Cir. 2000).

This case involves the application of the forum defendant rule to circumstances in which it is undisputed that there is: (i) diversity jurisdiction,[8] (ii) "properly joined" forum and non-forum defendants, and (iii) removal by a non-forum defendant at a time before any defendant has been served.

**Principles Favoring Remand**

In arguing that I should remand this case to state court, where Hutchins initiated it, Hutchins cites to several important principles.  While Hutchins correctly states these fundamental concepts, and while they generally support remand, in the specific circumstances presented they do not – individually or collectively – compel a remand.

### Removal statutes are strictly construed against removal, so doubts about removability should be resolved in favor of remand

As the Third Circuit has stated, "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand."  *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *see also Shamrock*, 313 U.S. at 108-09 (noting "Congressional purpose to restrict the jurisdiction of the federal courts on removal"

---

[8]Hence, this case is unlike *Pullman Co. v. Jenkins*, 305 U.S. 534 (1939), in which there was not complete diversity between the plaintiff and all of the defendants.  There, if the plaintiff had served a non-diverse, in-forum defendant, there would have been no basis for federal jurisdiction.

and "calling for the strict construction" of removal statutes).

Elsewhere the Third Circuit has stated that if "there is any doubt as to the propriety of removal, [the] case should not be removed to federal court." *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996). It appears, however, that this doubt-resolving principle applies primarily if not exclusively to doubts about whether federal jurisdiction exists in a particular case. In such a case, the federal court is called upon to analyze whether there is any arguable merit to the plaintiffs' suit against the forum defendant – and, in making this assessment, all factual disputes and all uncertainties about the substantive state law on which the plaintiff's claim is based are resolved in favor of the plaintiff.

For instance, in *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985), the Third Circuit explained that it is "[b]ecause lack of [federal] jurisdiction would make any decree in the case void . . . [that] the removal statute should be strictly construed and all doubts resolved in favor of remand" (emphasis added). Here, where there are no doubts that federal diversity jurisdiction exists – and there are no allegations that Hutchins is engaged in "fraudulent joinder," whereby a state-court plaintiff sues an in-state (forum) defendant with respect to whom she has no meritorious claim, solely for the purpose of preventing removal – this principle has reduced applicability.

The same point can be discerned in the Third Circuit's analysis in *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), in which the Court stated that a district court confronted with a motion to remand must "resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." For this proposition, *Boyer* relied on *Carriere v. Sears, Roebuck and*

10

*Co.*, 893 F.2d 98, 100 (5th Cir. 1990), which expressly linked these principles to the concept of fraudulent joinder: "The standard for judging fraudulent joinder claims of this sort is clearly established in this circuit: After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned."

It is also noteworthy that, notwithstanding that removal statutes are narrowly construed against removal, several courts confronted with precisely the circumstances presented here have permitted removal and denied remand. *See infra.*


### A statute must not be construed to lead to a bizarre or absurd result

"A basic tenet of statutory construction is that courts should interpret a law to avoid absurd or bizarre results." *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 338 (3d Cir. 2006); *see also United States v. Zats*, 298 F.3d 182, 187 (3d Cir. 2002) (refusing to "read a text to produce absurd results [that are] plainly inconsistent with the drafters' intentions"). Hutchins insists that "[a]ny interpretation of Section 1441(b) that requires a plaintiff to serve a defendant with process within five days of filing suit is 'absurd and bizarre'" and, therefore, must be rejected. (D.I. 6 at 3)

However, even an unreasonable result may not "sink to the level" of "absurd" or "bizarre." Consequently, it is rare that unambiguous statutory language will be ignored on the basis of this doctrine. *See generally* 2A Sutherland Statutes and Statutory Construction § 46:7 (7th ed.) ("[T]he absurd results doctrine should be used sparingly because judicial speculation that the legislature could not have meant what it unmistakably said risks corrupting the

11

separation of powers doctrine."). While adopting Bayer's view of § 1441(b) may create an arguably unseemly race between plaintiffs trying to serve defendants with state court complaints and defendants rushing to file notices of removal in federal court, it is not clear to me that this result would be "absurd" or "bizarre."

In this regard, it is noteworthy that the removal statutes expressly permit defendants to remove state court actions to federal court prior to service. *See* 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within thirty days after the <u>receipt by the defendant, through service</u> **or otherwise**, of a copy of the initial pleading . . . .") (emphasis added); *Massey v. Cassens & Sons, Inc.*, 2006 WL 381943, at *1 (S.D. Ill. Feb. 16, 2006) ("[N]othing in 28 U.S.C. § 1441 or any other statute requires defendants to have been served themselves prior to removing a case to federal court."). That there are some circumstances in which Congress plainly anticipated that removal might occur prior to service makes all the less persuasive the argument that permitting Bayer's removal prior to service is "absurd" or "bizarre."

Moreover, § 1441(b)'s "forum defendant" rule is a procedural rather than a jurisdictional rule. *See Roxbury*, 316 F.3d at 227. Thus, under any interpretation of § 1441(b), extremely early filing of a notice of removal does not defeat federal jurisdiction; it only presents a procedural defect that will be found to have been waived if not timely raised by an objecting party. *See Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 90 n.3 (3d Cir. 1999) (permitting removed action to proceed even though "this case was technically not removable" because one defendant was citizen of state in which action was brought); *Korea Exchange Bank v. Trackwise Sales Corp.*, 66 F.3d 46, 50-51 (3d Cir. 1995) ("[R]emoval by a forum defendant in noncompliance with section 1441(b) does not deprive a federal court of subject matter jurisdiction . . . ."). This,

too, makes it difficult to conclude that enforcing § 1441(b)'s plain language, and perhaps triggering a race between service and early removal, is an "absurd" or "bizarre" result.

### A statute should not be construed to lead to a result Congress did not intend

A related principle is that a statute should not be construed in a manner that is contrary to Congressional intent (even if such contrary result is not per se "absurd" or "bizarre"). Typically, the best indicator of Congressional intent is the language of the statute Congress passed. *See In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002) ("We look to the text of a statute to determine congressional intent, and look to legislative history only if the text is ambiguous."). To the extent such intent may be discerned from legislative history, in the instant case there is no history on point. *See Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp.2d 640, 644 (D.N.J. 2008) (explaining that Court undertook thorough examination of legislative history and was "able to locate neither a specific statement from Congress nor from the advisory Committee on Revision of the Judicial Code . . . regarding the addition of the 'properly joined and served' language").

The pertinent cases, and even Hutchins, agree that the reason Congress adopted § 1441(b)'s "joined and served" requirement was to protect non-forum defendants in diversity cases from being deprived of their right of removal by plaintiffs fraudulently joining a forum defendant whom plaintiffs had no intention of serving. *See Allen v. GlaxoSmithKline PLC*, 2008 WL 2247067, at *4 (E.D. Pa. May 30, 2008) ("[T]he intent behind the 'joined and served' requirement is to avoid gamesmanship by preventing plaintiffs from joining forum defendants merely to preclude federal jurisdiction.") (cited by Hutchins in D.I. 6 at 3; D.I. 25 at 1-2); *Fields v. Organon USA Inc.*, 2007 WL 4365312, at *3 (D.N.J. Dec. 12, 2007) ("[T]he purpose of the

13

'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve.") (internal quotation marks omitted) (cited by Hutchins in D.I. 25 at 1); Tr. at 7 (Plaintiff's counsel: "What Congress intended was not to have plaintiffs going forward and putting in an in-state defendant to avoid removal and then not serving them.").   But if this is the purpose of § 1441(b) (and I agree that it is), and nothing about permitting removal in the circumstances presented here disrupts that purpose (which it does not), then adopting Bayer's position and permitting removal here does not conflict with Congressional intent.

### Plaintiffs usually get to choose their forum

"[I]t is generally a plaintiff's prerogative to draft his complaint in a manner that grants him his choice of forum, where such choice exists." *Greene*, 344 F. Supp.2d at 685.  Here, Hutchins could have filed her action in Delaware Superior Court, or in the United States District Court for the District of Delaware, or in the MDL Action in the Southern District of Florida.  Her choice of Delaware Superior Court has some weight.

On the other hand, it is also true, of course, that there are circumstances in which a plaintiff is not entitled to have her lawsuit proceed in the court of her choice.  If a suit is filed in a court that lacks jurisdiction, or in the wrong venue, a court may – and sometimes must – dismiss or transfer it.  Also, obviously, the existence of the removal statutes establishes that, in some circumstances in which there is diversity jurisdiction, defendants are empowered to override plaintiffs' preference to proceed in a state court.

### The party seeking removal bears the burden

Bayer, as the party advocating removal, bears the burden of demonstrating that removal was proper. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Boyer*, 913 F.2d at 111. This burden largely requires that Bayer establish that federal subject matter jurisdiction exists. *See, e.g., Waldon v. Novartis Pharms. Corp.*, 2007 WL 1747128, at *1 (N.D. Cal. June 18, 2007). Bayer has met this burden since diversity jurisdiction concededly exists here.

### Principles Opposing Remand

There are several competing principles that, in the circumstances presented here, support denying the motion to remand and keeping this case in federal court.

### A court must enforce the plain language of an unambiguous statute

The most important principle favor Bayer's position is the primacy of statutory language. "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (stating where congressional intent "has been expressed in reasonably plain terms," statute's language "must ordinarily be regarded as conclusive" and, in such instances, "sole function of the court is to enforce the statute according to its terms") (internal quotation marks omitted). It is only "the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United*

15

*States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (internal quotation marks omitted; emphasis added).

Here, the language of § 1441(b) is plain and unambiguous: a case involving diversity jurisdiction "shall be removable" if none of the forum defendants have been "properly joined and served." For reasons already explained, enforcing this language according to its terms does not produce a result that is "absurd," "bizarre," or "demonstrably at odds with the intentions of its drafters."

### Every word in a statute must be given effect

"In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *see also* 2A Sutherland Statutes and Statutory Construction § 46:6 (7th ed.) ("No clause, sentence or word shall be construed as superfluous, void or insignificant if a construction can be found which will give force to and preserve all the words of the statute."). To adopt Hutchins' position – and deprive a defendant from removing a diversity case where a forum defendant has been properly joined but not served – would read the words "and served" out of § 1441(b), rendering them superfluous.

### Defendants are entitled to make litigation decisions based on existing conditions

As a general matter, "Defendants are entitled to act to remove a case based on the circumstances at the time they are sued, and are not required to guess whether a named resident defendant will ever be served." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp.2d 177, 181 (S.D.N.Y. 2003). To preclude defendants from removing cases to federal court

16

because plaintiffs might, if given a "reasonable time," eventually perfect service on a forum

defendant, would defeat this principle.

### Diversity jurisdiction and removal statutes exist to protect non-forum defendants from potential state court prejudice

A Senate Report explains:

> The underlying purpose of diversity of citizenship legislation (which incidentally goes back to the beginning of the federal judicial system, having been established by the Judiciary Act of 1789) is to provide a separate forum for out-of-state citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal courts.

S. Rep. 85-1830, 1958 U.S.C.C.A.N. 3099, 3102 (1958); *see also McSparran v. Weist*, 402 F.2d

867, 876 (3d Cir. 1968).  To the extent such prejudice exists, an interpretation of § 1441(b) that

would preclude a non-forum defendant from removing a state court action in circumstances in

which the language of the statute does not clearly prohibit such removal might improperly

subject a non-forum defendant to unfair prejudice.

Alternatively, it could be argued – as Hutchins does – that in a case in which there is at

least one forum defendant, any possibility of unfair prejudice to any of the defendants is

eliminated.  *See* Tr. at 9; *see also Fields*, 2007 WL 4365312, at *3 ("[I]n a case involving

multiple defendants where at least one is a citizen of the forum state, the forum defendant rule

nevertheless prohibits removal because the likelihood of local bias against all defendants is too

remote to warrant removal.").  From this perspective, the policies motivating diversity

jurisdiction are not applicable in the circumstances presented here.

### An unamended statute presumably means what courts have said it means

Bayer observes that § 1441(b) was adopted in 1948 and has been amended at least five times. *See* Tr. at 19. Never has it been amended to preclude removal in the circumstances presented here. From this fact Bayer finds support for its position, reasoning that if Congress disagreed with cases enforcing the plain language of § 1441(b) then Congress would have by now changed that language.

This argument is not especially persuasive. There is no indication that the precise issue presented here came before any court until 1998. *See Recognition Comm., Inc. v. American Auto. Ass'n*, 1998 WL 119528, at *3 n.3 (N.D. Tex. Mar. 5, 1998). That initial case granted a motion to remand, thereby rejecting the position defendants articulate here. *See id.* It appears that the first case to deny a remand motion in the present circumstances was decided in 2006. *See Massey*, 2006 WL 381943, at *3. Section 1441(b) has not been amended since 2002.

### The Conflicting Caselaw

Given the competing principles favoring and opposing remand, it is not surprising that the courts which have examined the issue now before me have been unable to reach a consensus as to the appropriate disposition. Indeed, "a distinct split of authority exists among [courts] about whether § 1441(b)'s clear statutory language should be followed." *Vitatoe v. Mylan Pharms., Inc.*, 2008 WL 3540462, at *2 (N.D. W. Va. Aug. 13, 2008); *see also Sullivan*, 575 F. Supp.2d at 642-43 (adopting plaintiff's position and remanding, but noting "[s]everal district courts," including other judges in same district (New Jersey), have come to opposite conclusion); Tr. at 15 (plaintiff's counsel acknowledging that the "courts that have addressed this issue . . . really are

18

all over the map"); Tr. at 23 (defense counsel agreeing "[t]here is a division of authority");

Lavelle & Kepplinger, "Removal Prior to Service: A New Wrinkle or a Dead End?" 75 *Defense*

*Counsel Journal* 177, 178 (Apr. 2008) ("When a non-forum defendant removes before any

defendant has been served, or when a non-served forum defendant removes, the language and

purpose of section 1441(b) arguably diverge, and courts are divided as to whether the plain

language or the perceived policy behind section 1441(b) controls.").[9]

Many of the cases admit there is merit in the position contrary to the one they have

adopted. *See, e.g., Holmstrom v. Harad*, 2005 WL 1950672, at *2-3 (N.D. Ill. Aug. 11, 2005)

(granting motion to remand while "recogniz[ing] the tension between this result and the literal

language of § 1441(b)" and acknowledging that defendants "presented a reasonable argument in

favor of removal in this unique situation"); *Recognition Comm.*, 1998 WL 119528, at *2 (finding

defendants' arguments "interesting" but disagreeing with them).

The cases that have adopted the position advocated here by Hutchins – and have granted

plaintiff motions to remand, despite the presence of diversity jurisdiction and despite the removal

having occurred at a time when no in-state defendant had been served – generally find that

enforcing the forum defendant rule in these circumstances would yield absurd results that

Congress cannot have intended. *See, e.g., Sullivan*, 575 F. Supp.2d at 642-43 ("[A]pplying the

---

[9]Indeed, courts are not even entirely in agreement as to which is the majority view. *Compare, e.g., Oxendine v. Merck & Co., Inc.*, 236 F. Supp.2d 517, 524 (D. Md. 2002) (stating that "majority of courts" have rejected defense interpretation of § 1441(b) that would permit removal where no in-state defendant had been served); *Allen*, 2008 WL 2247067, at *4 (stating that defendants' "argument has been adopted by some courts, [but] it has been rejected by many more") *with Vitatoe*, 2008 WL 3540462, at *4 & nn. 4-5 (identifying "long line of persuasive authority" for adopting defense position and denying remand); *Thomson v. Novartis Pharms. Corp.*, 2007 WL 1521138, at *4 (D.N.J. May 22, 2007) (finding "considerable case law" supports denial of motion for remand in circumstances identical to instant case).

plain meaning of section 1441(b), and allowing . . . a forum defendant . . . to avoid the forum

defendant rule merely because it had not yet been served at the time it filed the Notice [of

removal], would amount to an absurd result, demonstrably at odds with Congressional intent. . . .

The literal application of § 1441(b) in this case would both produce bizarre results that Congress

could not have intended, and results that are demonstrably at odds with the objectives Congress

did intend to effect."); *Ethington v. General Elec. Co.*, 2008 WL 4183900, at *6 (N.D. Ohio Aug.

13, 2008) ("The tactics employed by defendants such as in the instant case turn Congressional

intent on its head by allowing *defendants* to employ gamesmanship, specifically by rushing to

remove a newly filed state court case before the plaintiff can perfect service on anyone."); *Allen*,

2008 WL 2247067, at *4 ("[I]t would be especially absurd to interpret the same 'joined and

served' requirement to actually condone a . . . kind of gamesmanship from defendants– removing

before service, in order to later claim federal jurisdiction, for lack of proper service."); *Fields*,

2007 WL 4365312, at *5 (denying remand motion would "create[] a procedural anomaly

whereby defendants can always avoid the imposition of the forum defendant rule so long as they

monitor the state docket and remove the action to federal court before they are served by the

plaintiff"); *Vivas v. Boeing Co.*, 486 F. Supp.2d 726, 734 (N.D. Ill. 2007) ("[Defendant's]

interpretation of the removal statute would frustrate the consistent efforts of both Congress and

the courts to determine diversity jurisdiction based on the genuine interests of the parties to the

controversy. . . . [T]o allow a resident defendant to remove a case before a plaintiff even has a

chance to serve him would provide a vehicle for defendants to manipulate the operation of the

removal statutes.  Allowing either party to do that would be against what the courts have long

understood to be Congress's intent."); *Oxendine*, 236 F. Supp.2d at 526 (granting remand and

noting that "removability can not rationally turn on the timing or sequence of service of process"); *Recognition Comm.*, 1998 WL 119528, at *3 n.3 (adopting plaintiff's position and granting remand).

On the other hand, the cases that have endorsed the position advocated here by Bayer – denying motions to remand and, therefore, permitting removal by in-state or out-of-state defendants so long as no in-state defendant had yet been served at the time the action was removed – generally rely on the unambiguous language of § 1441(b), holding that the statutory language trumps any other considerations. *See, e.g.*, *Vitatoe*, 2008 WL 3540462, at *6 ("[N]o absurd result or 'procedural trap' is produced by applying a literal application of the statute."); *Waldon*, 2007 WL 1747128, at *3 (finding "no compelling reason to depart from the plain text of section 1441(b)"); *Thomson*, 2007 WL 1521138, at *4 (holding statutory text is "unambiguous" and "removal is prohibited only where a defendant, who is a resident of the forum state, has been 'properly joined *and served*," as any other interpretation "would read the words 'and served' out of the statute"); *City of Ann Arbor Employees' Retirement Sys. v. Gecht*, 2007 WL 760568, at *9 (N.D. Cal. Mar. 9, 2007) ("[I]f Congress had wanted to ensure that removal would not be appropriate until it was clear that Plaintiff was trying to prevent removal by speciously naming resident defendants, Congress could have provided that no removal petition could be filed until one or more nonresident defendant had been joined and served.  The statute also could have been written to give a plaintiff, *e.g.*, 30 or 60 days to effect service before permitting a defendant to remove."); *Frick v. Novartis Pharms. Corp.*, 2006 WL 454360, at *3 (D.N.J. Feb. 23, 2006) (finding "language of the statute is unambiguous" and "it is not readily apparent that applying the clear language of the statute to the present case would produce a result that is demonstrably at

odds with the intentions of Congress," so "the plain language of the statute will control");

*Massey*, 2006 WL 381943, at *3 ("That [§ 1441(b)] language is clear and unambiguous: where

complete diversity is present – as it is in this case – only the presence of a 'joined-and-served'

resident defendant defeats removal. . . . The statute contains no proviso, and, given its clarity, it

is not this Court's role to insert one. . . . Instead, this Court must be faithful to the language

Congress actually employed.").

　　　　None of these precedents, of course, is binding on me, but I have considered each of them

as persuasive, and instructive, authority.


**Recommendation To Deny Remand**

　　　　Having decided to decide the remand motion, and having assessed the conflicting

principles implicated as well as the precedents that exist, I return to where I began: the language

of § 1441(b).  "Where statutory language is plain and unambiguous, the sole function of the court

is to enforce it according to its terms."  *Mehta*, 310 F.3d at 311 (internal quotation marks

omitted).  The language of § 1441(b) is plain and unambiguous.  It provides that a case in which

there is diversity jurisdiction "shall be removable only if none of the parties in interest properly

joined and served as defendants is a citizen of the State in which such action is brought."  Here,

there is diversity jurisdiction and "none of the parties in interest properly joined and served as

defendants is a citizen of" Delaware, "the State in which [this] action" has been brought.

Accordingly, this action "shall be removable" and the motion to remand should be denied.

　　　　I acknowledge that there is persuasive authority reaching the contrary conclusion.  Of

course, given the split among the courts, this would be true regardless of which way I decided.

Finally, it may well be that § 1441(b) should be amended to provide for a "reasonable opportunity" for a plaintiff to serve the forum defendant, with reasonableness determined by circumstances including local rules regarding service. Any alteration of the statutory language, however, would require Congressional action. *See* 2A Sutherland Statutes and Statutory Construction § 46:2 (7th ed.) ("A court in construing an unambiguous statute must view the law as it is and not as it might wish it to be.").

## RECOMMENDED DISPOSITION AND ORDER

For the foregoing reasons, I recommend that Hutchins' motion to remand be DENIED.

I further order that Bayer's motion to stay is GRANTED. All proceedings in all of the related actions are STAYED pending the JPML's decision as to whether to transfer them to the MDL Action (MDL-1928 S.D. Fl.).[10] Hutchins' motion to stay transfer and supplemental motion to stay transfer are DENIED.

The parties are further ordered to submit within ten (10) days of the date of this Report and Recommendation and Order a proposed order or orders to dismiss the actions of the nine plaintiffs who have also filed suit directly in the MDL Action.

This Report and Recommendation and Order is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation and Order. Fed. R. Civ. P. 72(b). The failure of a party to object to legal

---

[10]Notwithstanding the stay, Hutchins may file objections to this Report & Recommendation and Order and, if any objections are filed, Bayer may respond to them. No further briefing will be permitted with respect to any objections.

conclusions may result in the loss of the right to de novo review in the district court. *See*

*Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir.1987); *Sincavage v. Barnhart*, 171 Fed.

Appx. 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-*Pro Se* Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on

the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.


Dated: January 23, 2009

Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE

24